# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUANITA QUINTANA,<br><br>   Plaintiff,<br><br>   vs.<br><br>JO ANNE BARNART,<br>Commissioner of Social Security,<br><br>   Defendant.<br>_____/ | CASE NO. CV-F-04-6049 LJO<br><br>**MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION** (Doc. 14) |

Plaintiff Juanita Quintana ("claimant") seeks judicial review of an administrative decision denying her claim for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties consented to proceed before a United States Magistrate Judge, and by an October 31, 2005 order, this action was assigned to United States Magistrate Judge Lawrence J. O'Neill for all further proceedings. Pending before the Court is claimant's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner").

Claimant filed her complaint on August 3, 2004 and her opening brief on June 21, 2005. The Commissioner filed her opposition to the appeal on September 7, 2005. Claimant filed a reply brief on September 21, 2005.

## BACKGROUND

### Administrative Proceedings

Claimant filed an application for Disability Insurance Benefits under the Social Security Act on

December 23, 2002. (Administrative Record "AR" 63-65.)  She was found disabled beginning on December 4, 2002. Plaintiff challenges the Appeals Council's finding based on her contention that she became disabled on April 2, 2001. Claimant filed this action for judicial review pursuant to 42 U.S.C. § 405(g).

## Claimant's Background and Work Experience

Claimant was born on December 5, 1947. (AR 294.)  She graduated from high school in special education classes.  (AR 294.)  Her last relevant work was as a newspaper sorter and as a field worker. (AR 296.)

## Medical History

The pertinent medical history is summarized as follows.

Claimant received treatment from March 1998 to November 2002 from Logan Street Medical Group. (AR 134-164, 253-259.) On September 8, 1999, claimant complained of abdominal pain. (AR 163.)  She reported long term history of abdominal pain.  (AR 157.)  She had a negative abdominal examination.  (AR 156.)  On September 15, 2999, claimant again reported abdominal pain.  (AR 155.) She was started on Prevacid and Amoxicillan and Erythromycin.  (AR 155.)  On October 15, 1999, abdominal pain was significantly improved and the doctor reported "doubtful for rheumatoid arthritis." (AR 154.)  On November 19, 1999, the treatment notes stated complaints of lumbar spine/strain there was "possibly symptom magnification."  (AR 154.)  On April 10, 2000, claimant was upset with multiple problems.  She had a slightly elevated sedimentation rate, she took Darvocet as need for back pain and is depressed.  (AR 148.)  On June 26, 2000, she was seen for epigastric discomfort with elevation of alkaline phosphatase.  A liver panel and GTT was ordered.  (AR 147.)  On July 10, 2000, claimant was seen for back strain.  She was taking Celebrex with seemed to be helping.  She was to continue her medication for back strain with osteoarthritis, depression and for chronic abdominal pain. (AR 147.)  Another radiology report for abdominal pain on July 31, 2000, showed negative upper GI examination.  (AR 145.)  On January 4, 2001, claimant was seen for depression, fatigue, abdominal pain. (AR 145.)  She was to continue Elavil for fatigue, was put on Prevacie for her abdominal issue and was referred to Dr. Leiba for chronic fatigue and an increase in sedimentation rate.  (AR 145.)  On February 8, 2001, she was assessed with chronic GERD exacerbated by arthritis medication, chronic fatigue and

2

arthralgias, depression, urinary incontinence and osteoporosis. (AR 141.)  On February 22, 2001, she was seen for a followup. (AR 138.)  She had tenderness along the spinal column, paraspinous muscles from the rhomboid area to the lower back. (AR 138.)  She returned for on visits on March 14, 2001 and April 2, 2001. (AR 137.)  She had some improvement in pain, she had a positive sedimentation rate, she was given disability from work through May 1, 2001. (AR 137.)  On July 11, 2001, claimant was determined to have a significant sized ovarian cyst and was recommended to see a gynecologist. (AR 173.)

Claimant was seen at St. Agnes Medical Center on March 12, 2001 for abdominal pain. (AR 125.)  She had an endoscopy performed. (AR 126.)  The endoscopy was unremarkable. (AR 131.)

Claimant was seen for a psychiatric evaluation on June 12, 2001 by Shireen Damania, M.D. (AR 165.)  Claimant reported stress due to stomach problems. (AR 166.)  Claimant was neatly dressed and groomed, moderately obese and pleasant. (AR 166.)  Her speech was normal to overproductive and spoke in a dramatic manner; anxious mood, and affect was appropriate. (AR 166-167.)  No evidence of thought disorder; attention span was within normal limits and insight and judgment were fair. (AR 167.)  Dr. Damania diagnosed mild psychosocial stressors and a GAF of 55 to 60.  Dr. Damania assessed claimant as able to understand, carry out and remembers simple one and two step job instructions; respond appropriately to co-workers, supervisors and the public; and can respond appropriately to usual work situations and changes in routine work settings. (AR 167.)

Claimant was seen by Dr. Leyba, M.D. from January 25, 2001 to May 30, 2001 for back pain and elevated sedimentation rate. (AR 183-189.)

On November 5, 2001, State agency physician, Carmen E. Lopez, M.D., completed the Physical Functional Capacity Assessment form. (AR 191.)  Dr. Lopez assessed claimant as able to lift 20 pounds occasionally and 10 pounds frequently; sit/stand/walk 6 hours in an 8 hour workday. (AR 192.)

Dr. Ikawa, another state agency physician completed the Psychiatric Technique Review form and agreed with Dr. Damania. (AR 202, 214.)  Claimant did not have restrictions of daily activities, no difficulties maintaining social functioning and no difficulties maintaining concentration, persistence and pace. (AR 214.)

In a Physical Functional Capacity Assessment form completed by state agency Dr. Wong on July

3

6, 2001, he found claimant capable of medium exertion. (AR 218-225.)

Richard Engeln, Ph.D. conducted a psychological evaluation on October 15, 2002. (AR 229.) Dr. Engeln administered several psychological tests and conducted an interview. (AR 229.) He diagnosed her as able to verbally, cognitively and socially able to adjust to job context where instructions are unidimensional and where normal supervision is provided. Concentration and social skills are adequate for work adjustment and she is able to perform one-to-two step instructions. (AR 232.)

Claimant was seen for an orthopedic examination on October 2, 2002 by Jill Ostrem, M.D. (AR 239.) She complained of upper and low back pain. (AR 239.) Following examination, Dr. Ostrem functionally assessed claimant as able to lift and carry occasionally 20 pounds and frequently 10 pounds and can stand and walk two to four hours and sit without restrictions. She was exertionally limited from repetitive climbing, stooping, kneeling, pushing, balancing, crouching, crawling and pulling. (AR 242.)

## Hearing Testimony

Claimant testified that she cannot work due to the pain in her back. (AR 296.) She has diabetes and may have cancer. (AR 297.) She can lift 15 pounds but it is difficult. (AR 299.) She has trouble bending from the waist and bending her knees. (AR 299.) She cannot stoop or crawl. (AR 299.) Her back hurts below the waist on the right side. (AR 199.) Her pain is a 10 most of the time. (AR 300.) Her daughter fixes most of the meals. (AR 301.) Claimant does the dishes and the laundry. (AR 301.) She attends church, but is unable to sit through the whole service. (AR 301.) She has a driver's license. (AR 302.)

## ALJ Findings

In his February 12, 2003 decision, the ALJ characterized the "primary issue" before him as whether claimant was disabled. (Suppl. AR 23.) In determining claimant was not disabled and not eligible for disability benefits, the ALJ made the following findings (Suppl. AR 31):

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR §404.1520(b) and 416.920(b).

4. This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The ALJ finds the claimant's allegations regarding her limitations are not credible to the degree alleged, as set forth in the body of the decision.

6. The ALJ has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairment. 20 CFR §§404.1527 and 416.927.

7. The claimant has the residual functional capacity to perform a full range of light exertional activities.

8. The claimant is unable to perform any of her past relevant medium work. 20 CFR §§404.1565 and 416.965.

9. The claimant is an "individual closely approaching advanced age." 20 CFR §§404.1563 and 416.963.

10. The claimant has a high school education. 20 CFR §§404.1564 and 416.964.

11. The claimant has no transferable skills from any past relevant work and /or transferability of skills is not an issue in this case. 20 CFR 404.1568 and 416.968.

12. The claimant has the residual functional capacity to perform the full range of light work. 20 CFR 404.1567 and 416.967.

13. Based on an exertional capcity for light work, and the claimant's age, education and work experience, a finding of "not disabled" is directed by Medical-Vocational Rule 202.13.

14. The claimant was not under a "disability" as defined in the Social Security act, at any time through the date of the decision. 20 CFR 404.1520(f) and 416.920(f).

## DISCUSSION

### Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. *See* 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the

determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Sanchez v. Secretary of Health & Human Services*, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings). Substantial evidence is "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

The record as a whole must be considered, weighing both the evidence that supports and detracts from the Commissioner's conclusion. *Jones,* 760 F.2d at 995. If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

Thus, this Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g) to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988).

Claimant contends the ALJ's erred as follows: (1) finding her impairments non-severe, (2) failed to consider listing 12.05, (3) by using the Grids, and (4) failed to fairly consider her testimony and questionnaires.

### Review of Impairments

Claimant argues that the ALJ erred in adequately assessing all of her impairments or considering them in combination.

The ALJ acknowledged that claimant claimed impairments of inflammation of her body, arthritis, anemia, a history of anxiety, and pain in her left hip and shoulder. (Suppl. AR 24-25.) The ALJ found that claimant's "diffuse arthritis and arthralgias" severe. (Suppl. AR 25.) The ALJ noted that as to her mental condition, she also has "non-severe impairments in the nature of an adjustment response to physical impairment and a history of an academic delay." (Supp. AR 25.)

The ALJ did not find any of her other impairments severe. The Social Security regulations define severe impairment as an impairment which significantly limits a claimant's "ability to do basic work

activities." 20 C.F.R. §§§§ 404.1521, 416.921; *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). "Basic work activities" are defined as including such capabilities as walking/sitting/standing/lifting, 20 C.F.R. § 404.1521(b)(1),(2); understanding, carrying out, and remembering simple instructions, 20 C.F.R. § 404.1521(b)(3); use of judgment, 20 C.F.R. § 404.1521(b)(4); responding appropriately to supervision, co-workers and usual work situations, 20 C.F.R. § 404.1521(b)(5); and dealing with changes in a routine work setting, 20 C.F.R. § 404.1521(b)(6). If the impairment does not significantly limit a claimant's physical or mental ability to do basic work activities, the impairment is not severe. *Bustamante v. Massanari*, 262 F.3d at 955

The medical evidence, here, did not establish the existence of other severe medically determinable impairment. The ALJ identified all the pertinent medical history supportive of the finding of non-severity. He reviewed the medical records from Logan Street Medical Group and the orthopedic evaluation, and concluded that claimant's back pain was not a severe impairment.

The ALJ thoroughly evaluated the medical records of claimant's mental condition. He discussed the Logan Street Medical Group records, the psychiatric consultative examination by Dr. Shireen Damania and psychological evaluation by Dr. Engeln. (AR 25-26, 27.)

Claimant does not identify what evidence in the Record she contends supports a finding of severity for her other claimed impairments. Indeed, there is substantial evidence in the Record to support the ALJ's rejection of these claims as severe

Claimant finally argues that the ALJ did not consider her obesity.

An ALJ must consider obesity in determinations of disability. *Hammock v. Bowen*, 879 F.2d 498, 503-504 (9th Cir.1989) (en banc). See also Social Security Ruling 02-01P (discussing the evaluation of obesity in disability claims), superceding Social Security Ruling (No. 00-3p). SSR 02-01P states, that as the initial step in the sequential evaluation process, "when establishing the existence of obesity, we will generally rely on the judgment of a physician who has examined the claimant and reported his or her appearance and build." (SSR 02-01P, para. 4.)

While the SSR states that the Social Security Administration will evaluate effects of obesity, it remains claimant's burden to show that obesity has some effect on her functional capacity. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (An ALJ is not required to discuss the combined effects of

7

a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence.)  Claimant must come forward with some evidence of how her obesity limits her functioning.  *Burch v. Barnhart*, 400 F.3d at 683 ("Even on appeal, Burch has not pointed to any evidence of functional limitations due to obesity which would have impacted the ALJ's analysis.")

Neither any other treatment notes nor any other diagnoses addressed claimant's limitations due to obesity.  Moreover, claimant did not present any testimony or other evidence at her hearing that her obesity impaired her ability to work.  See Social Security Ruling 02-01P ("[W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments.  Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment.  We will evaluate each case based on the information in the case record.")

Claimant argues that the ALJ failed to adopt all of the restrictions in the residual functional assessment that Dr. Ostrem assessed.  It is the ALJ's duty to resolve conflicting medical evidence.  *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003) (Where, as here, the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict.)  If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).  The Court does not find error.

### **Listing 12.05**

Claimant argues that the ALJ failed to review Listing 12.05 for mental retardation at Step 3.

A plaintiff's impairment is not considered to be one in the Listing of Impairments[1] merely because it has the diagnosis of a listed impairment; it must also have the findings shown in the listed impairment.  20 C.F.R. §§404.1525(d), 416.925(d).  A plaintiff's impairments meet a listed impairment

---

[1] The purpose of the Listings is to describe impairments "severe enough to prevent a person from doing any gainful activity."  *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S.Ct. 885 (quoting Social Security Ruling (SSR) 83-19, Dept. of Health and Human Services Rulings 90 (Jan. 1983)).  If a claimant meets or equals a listed impairment, he/she is disabled.  *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

only if the claimant's impairments manifest the specific findings described in the set of medical criteria for the listed impairment. *Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885 (1990).

Section 12.05( c) addresses mental retardation and requires a valid verbal, performance, or full scale IQ of 60-70 and physical or other mental impairment imposing an additional and significant work-related limitation of function. 20 CFR Pt 404 Subpart P, App. 1, sec. 12.05.

Here, the ALJ ordered two consultative examinations, one by a psychiatrist, Dr. Damania, in June 2001, and one by a psychologist, Dr. Engeln, in October 2002. (Suppl AR 26.) Both of these doctors indicated that claimant could work despite any mental impairment, despite any diagnosis of mild mental retardation. Dr. Engeln's administered tests with results for verbal and visual intelligence in the mild range of mental retardation. His report indicates that he did not believe the scores were valid: "The obtained protocol is an underestimate of her actual cognitive abilities due to concentration weakness, quick withdrawal from tasks requiring concentration or effort." (AR 232.) He noted that on examination, she "presented with no evidence of any mental or emotional illness." (AR 232.) Further, he stated: "Verbally, cognitively, and socially she is able to adjust to job context where instructions are unidimensional, where normal supervision is provided. Concentration and social skills are adequate for work adjustment. She is able to receive one-to-two step instructions, but not technical instructions." (AR 232.)

Dr. Damania similarly noted plaintiff to be of average intelligence, but still capable of simple mathematics and her insight and judgment seemed fair. (AR 167.) Dr, Damania assessed claimant as able to understand, carry out and remember simple one and two step job instructions; respond appropriately to co-workers, supervisors and the public; and can respond appropriately to usual work situations and changes in routine work settings. (AR 167.)

The claimant does not cite to authority for the proposition the ALJ must engage in a particular analysis or issue findings on rejecting a Listing. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) ("[i]t is unnecessary to require the [Commissioner], as a matter of law, to state why a claimant failed to satisfy every different section of the listing of impairments"). There is substantial evidence in the Record for the ALJ to have rejected claimant as meeting Listing 12.05.

/////

**Applying the Grids**

Claimant argues that she turned 55 years old on December 5, 2002, and the Appeals Council deemed her disabled from that date. She argues that the "council mechanically applied Grid Rule 202.04 despite the fact that this Grid is not to be applied mechanically under the law." Claimant basically argues that the Commissioner should have been flexible in the application of the Grids and found her disabled prior to December 2, 2002, due to the proximity of her turning 55.

In 1978, the Secretary of Health and Human Resources promulgated the Medical-Vocational Guidelines (also known as "grids") to improve the efficiency and uniformity of Social Security benefits determination. *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9th Cir. 1988). The grids take account of various vocational factors, such as age, education and work experience, and the claimant's residual functional capacity. 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1985). The grids relieve the SSA of the need to rely on vocational expert testimony in cases where the underlying findings of fact correspond precisely to the criteria of a specific rule in the guidelines. *Heckler v. Campbell*, 461 U.S. 458, 462, 103 S.Ct. 1952 (1983).

Based on the evidence, the ALJ found claimant has the residual functional capacity to perform physical exertion and nonexertional requirements of light activities. Where a claimant's qualifications correspond to the job requirements, the grids direct a conclusion as to whether work exists that the claimant could perform. *Heckler v. Campbell*, 461 U.S. at 462. The ALJ stated that claimant fell within Rule 202.13 (20 CFR Part 404, Subpart P, App. 2) because she could do the full range of light work. There was substantial evidence to support the finding of light work.

Claimant basically argues that her "advanced age" should have been given greater consideration. Claimant argues, "As Hallex sets out, the ALJ can find an onset up to six months before the 55th birthday."

In applying the Grids, the Ninth Circuit has held "line drawing is reasonable and in accordance with the express language and purpose of [the grid] regulations. Moreover, we have recognized that the distinction drawn in the regulations between [age thresholds] may be imperfect, but it is not irrational.... Lines must be drawn at some point, otherwise there would be no efficient way to utilize the Grid system." *Russell v. Bowen,* 856 F.2d 81, 84 (9th Cir.1988). Thus, the fact that the ALJ and the Appeals

Council applied the Grid, as claimant calls "mechanically," is not error. Moreover, the application of the Manual on the Social Security Administration Hearings, Appeals and Litigation Law (HALLEX) "has no legal force and is not binding. As such, it does not prescribe substantive rules and therefore does not carry the force and effect of law." *Bunnell v. Barnhart*, 336 F.3d 1112, 1115 (9th Cir. 2003). The HALLEX is not binding on this Court.

### **Review of the Testimony**

Claimant argues that the ALJ did not review the third party witness representation, credit observations of the District Office employees or properly reject her testimony.

A claimant's credibility generally becomes important at the stage where the ALJ is assessing residual functional capacity, because the claimant's subjective pain statements may tell of greater limitations than can medical evidence alone. Social Security Ruling (SSR) 96-7p (1996); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001). For this reason, the ALJ may not reject the claimant's statements regarding her limitations merely because they are not supported by objective evidence. *Fair v. Bowen*, 885 F.2d 597, 602 (9th Cir.1989). To determine whether the claimant's testimony regarding the severity of his symptoms is credible, the ALJ may consider, for example: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). An ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). An ALJ "may disregard unsupported, self-serving statements." *Flaten v. Secretary of Health & Human Services*, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ must give specific, convincing reasons for rejecting the claimant's subjective statements." *Tonapetyan v. Halter*, 242 F.3d at 1147, 1148.

/////

/////

/////

/////

1    In rejecting claimant's subjective complaints, the ALJ made specific findings. First, the ALJ
2    considered the complaints:

> "In making my assessment, I have also considered the symptoms, including pain, and the extent to which these symptoms can reasonable be accepted as consistent with the objective medical evidence . . ." (AR 28.)

6    The ALJ then reviewed and accurately summarized plaintiff's testimony from the hearing. (AR 28.)
7    The ALJ noted that the nature, location, onset, duration, frequency, radiation and intensity of the
8    impairments are not corroborated by the record:

> "While the claimant testified at the hearing that her pain is a ten on a scale from one to ten most of the time, this does not appear to be supported by the objective evidence of records. The claimant does have a slightly elevated sedimentation rate, but none of her treating sources have diagnosed rheumatoid arthritis. Her symptoms of diffuse joint pain have been more consistent with fibromyalgia and arthralgia, as evidence by the medical evidence." (AR 28) (evidence citations omitted.)

13   The ALJ also considered the conservative treatment she had received:

> "She has been treated conservatively with medication and has not been referred to a pain clinic or received acupuncture or biofeedback." (AR 28-29) (evidence citations omitted.)

16   The need for infrequent or conservative treatment may refute allegations of disabling pain or
17   impairment. *See Fair v. Bowen*, 885 F.2d 597, 603-04 (9th Cir. 1989).

18   The ALJ acknowledged possible joint pain, but noted the lack of restrictions placed on claimant.

> "Although her treating source diagnosed probable degenerative joint disease, the lumbar x-ray take did not confirm this diagnosis as it was normal. While the claimant's treating source temporarily precluded the claimant from working in May 2001, there is no evidence of any permanent restrictions in his records. In fact, Dr. Ostrem, the consulting examiner, is the only physician of record, who reported any ongoing physical functional limitations (limiting the claimant to light exertion), associated with her arthralgia and diffuse arthritis." (AR 28-29) (evidence citations omitted.)

24   While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated
25   by objective medical evidence, the medical evidence is still a relevant factor in determining the severity
26   of the claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

27   The ALJ also noted the scope and breath of claimant's activities of daily living:

> "While the claimant claims she is unable to work due to her pain and

12

> cannot sit, stand or walk for very long, she did admit to a broad range of daily activities that are consistent with light exertion, such as doing dishes, doing laundry, occasionally making beds, attending church and caring for her own personal needs." (AR 29.)

*See Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (An ability to take care of personal needs, prepare easy meals, do light housework, and shop for some groceries is inconsistent with the presence of a condition which would preclude all work activity.) If a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Claimant next argues that the ALJ failed to consider all seven criteria from SSR 96-7p.

Claimant has not cited to any authority, aside from SSR 96-7p, for the proposition that the ALJ must consider *all* of the 96-7p factors. To the contrary, the Ninth Circuit has upheld ALJ's findings on less than an evaluation of all of the SSR 96-7p listed factors. "In assessing the claimant's credibility, the ALJ may use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for truthfulness and any inconsistent statements in [his] testimony. The ALJ must give specific, convincing reasons for rejecting the claimant's subjective statements." *Tonapetyan v. Halter*, 242 F.3d 1144, 1147, 1148 (9th Cir. 2001) (upholding adverse credibility finding where ALJ cited claimant's "lack of cooperation at the hearing, her presentation at the hearing, her tendency to exaggerate, her inconsistent statements, and her lack of cooperation during consultative examinations"); *Orteza v. Shalala*, 50 F.3d 748 (9th Cir.1995) (upholding adverse credibility finding where ALJ identified treating physician's statement as to lack of objective evidence, pointing to the scope of activities identified in claimant's initial application, no medication side effects or prescription medicine.); *Meanel v. Apfel*, 172 F.3d 1111 (9th Cir. 1999) (upholding adverse credibility finding on claimant's inconsistent testimony with that of treating physician's notes, minimal conservative treatment for alleged incapacitating pain).

Thus, there is substantial evidence in the Record to support the rejection of claimant's subjective complaints.

Claimant also argues that the ALJ failed to discuss third party statements or District Office personnel observations.

The Ninth Circuit has long held that ALJ does not need to discuss all evidence presented to him. *Vincent v. Heckler,* 739 F.2d 1393, 1394-95 (9th Cir.1984). An ALJ need explain why significant and probative evidence has been rejected. *Id.* An example of significant and probative evidence is uncontroverted medical evidence. *Id.* at 1395. The *Vincent* court found controverted medical evidence and lay testimony to be neither significant nor probative. *Id.*

## **CONCLUSION**

The Court finds no error in the ALJ's analysis. As such, the ALJ's decision is supported by substantial evidence in the Record as a whole and based on proper legal standards. Accordingly, this Court DENIES claimant's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment as a matter law in favor of defendant Jo Anne B. Barnhart, Commissioner of Social Security and against claimant Juanita Quintana.

IT IS SO ORDERED.

**Dated:   November 3, 2005**            **/s/ Lawrence J. O'Neill**
b9ed48                                            UNITED STATES MAGISTRATE JUDGE